IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROY LEE WEEKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-04138 |
| | § | |
| NATIONWIDE MUTUAL | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Dated: January 13, 2023

Respectfully submitted,

*Of Counsel:*

Urvashi Morolia
Texas State Bar No. 24096083
Federal I.D. No. 3436021
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
umorolia@littler.com

*/s/ Kelley Edwards*
Kelley Edwards (Attorney in charge)
State Bar No. 24041775
Federal I.D. No. 560755
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
kedwards@littler.com

**ATTORNEY FOR DEFENDANT
NATIONWIDE MUTUAL INSURANCE
COMPANY**

**TABLE OF CONTENTS**

PAGE

I. NATURE AND STAGE OF THE PROCEEDING ..................................1

II. ISSUES TO BE RULED UPON BY THE COURT ...................................1

III. INTRODUCTION AND SUMMARY OF THE ARGUMENT ...............2

IV. STATEMENT OF FACTS ...........................................................................4

    A. Overview of Weeks's Employment with Nationwide.....................4

    B. Weeks is Assigned a New Associate Director After Nationwide's 2017 Restructure ....................................................5

    C. Weeks is Issued a Job Elimination Notice as Nationwide Undergoes a RIF and Reorganization in 2019................................9

    D. Weeks Applied For but Did Not Receive a Lateral Position in 2020........................................................................................10

    E. Weeks's Disability Leave and Retirement ...................................11

V. ARGUMENT & AUTHORITIES................................................................12

    A. Summary Judgment Standard ........................................................12

    B. Weeks's Age and Race Discrimination Claims are Barred by the Statute of Limitations under Title VII and Chapter 21 .................................................................................................12

    C. Weeks Cannot Establish his Failure-to-Promote Claim under Section 1981, Title VII, or Chapter 21 .................................14

        i. Weeks did not suffer any adverse employment action.......15

        ii. Nationwide had a legitimate, non-discriminatory reason for not selecting Weeks for the position, and there is no evidence this reason was merely a pretext for age or race discrimination..............................................16

**TABLE OF CONTENTS**
(CONTINUED)

D.    Weeks Cannot Establish Claims of Discriminatory "Forced Transfer" or Demotion Under Section 1981 as a Matter of Law ................................................................................18

    i.    Weeks's "forced transfer" discrimination claim fails ........19

        a. *Weeks cannot demonstrate a prima facie case.* ..................19

        b. *Weeks cannot prove that Nationwide's assignment of shops was pretext for discrimination* ...........................22

    ii.    Weeks's Discriminatory Demotion Claim Fails .................23

    iii.    Weeks Cannot Establish a Hostile Work Environment Claim ................................................................................25

E.    Weeks's Constructive Discharge Claims Fails as a Matter of Law ................................................................................28

VI.    CONCLUSION ................................................................................30

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Anderson v. City of Dallas*,
  116 F. App'x 19 (5th Cir. 2004) ........................................................................12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)............................................................................................12

*Aryain v. Wal—Mart Stores Tex. LP*,
  534 F.3d 473 (5th Cir. 2008) .............................................................................29

*Balas v. Huntington Ingalls Indus., Inc.*,
  711 F.3d 401 (4th Cir. 2013) .............................................................................27

*Bowers v. Nicholson*,
  271 Fed. Appx. 446 (5th Cir. 2008)...................................................................14

*Brandon v. Sage Corp.*,
  61 F. Supp. 3d 632 (W.D. Tex. 2014) ...............................................................15

*Burger v. Cent. Apartment Mgmt., Inc.*,
  168 F.3d 875 (5th Cir. 1999) .............................................................................16

*Cardenas-Garcia v. Texas Tech Univ.*,
  2004 WL 2862319 (5th Cir. 2004) ....................................................................20

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)............................................................................................12

*Chacko v. Patuxent Inst.*,
  429 F.3d 505 (4th Cir. 2005) .............................................................................27

*Chambers v. Joseph T. Ryerson & Son, Inc.*,
  No. 3:05-cv-1553-D, 2007 U.S. Dist. LEXIS 48338 (N.D. Tex.
  July 2, 2007).......................................................................................................21

*Crawford v. Formosa Plastics Corp.*,
  234 F.3d 899 (5th Cir. 2000) .............................................................................17

*Douglas v. DynMcDermott Petroleum Operations Co.*,
  144 F.3d 364 (5th Cir. 1998) .............................................................................20

# TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*E.E.O.C. v. WC&M Enterprises, Inc.*,
496 F.3d 393 (5th Cir. 2007) ...........................................................26

*EEOC v. La. Office of Cmty. Servs.*,
47 F.3d 1438 (5th Cir. 1995) ..........................................................23

*EEOC v. Mississippi College*,
626 F.2d 477 (5th Cir. 1980) ..........................................................14

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)..................................................................27, 28

*Flowers v. S. Reg'l Physician Servs. Inc.*,
247 F.3d 229 (5th Cir. 2001) ..........................................................25

*Fonteneaux v. Shell Oil Co.*,
289 F. App'x 695 (5th Cir. 2008) ....................................................18

*Gowesky v. Singing River Hosp. Sys.*,
321 F.3d 503 (5th Cir. 2003) ..........................................................25

*Hanchey v. Energas Co.*,
925 F.2d 96 (5th Cir. 1990) ............................................................12

*Harris v. Forklift Systems, Inc.*,
510 U.S. 17 (1993).........................................................................26

*Hernandez v. Yellow Transp., Inc.*,
670 F.3d 644 (5th Cir. 2012) ..........................................................15

*Hinkely v. Envoy Air, Inc.*
968 F3d 544 (5th Cir. 2020) ...........................................................13

*Hockman v. Westward Commc'ns, L.L.C.*,
407 F.3d 317 (5th Cir. 2004) .....................................................26, 29

*Hoffman-La Roche v. Zeltwanger*,
144 S.W.3d 438. (Tex. 2004) ..........................................................15

*Hornsby v. Conoco, Inc.*,
777 F.2d 243 (5th Cir. 1985) ..........................................................14

### TABLE OF AUTHORITIES
(CONTINUED)

**PAGE**

*Jackson v. Univ. of Texas M.D. Anderson Cancer Ctr.*,
    54 F. App'x 404 (5th Cir. 2002) ...........................................................................28

*Jones v. R.R. Donnelley & Sons Co.*,
    541 U.S. 369 (2004) .................................................................................18, 27

*Jones v. Robinson Prop. Group, L.P.*,
    427 F.3d 987 (5th Cir.2005) ...............................................................................15

*Kenna v. Potter*,
    No. CIV.A. H-05-2069, 2007 WL 1795715 (S.D. Tex. June 19,
    2007) ........................................................................................................28, 29

*Kirmer v. Goodyear Tire & Rubber Co.*,
    538 F. App'x 520 (5th Cir. 2013) .......................................................................20

*Lee v. City of Corpus Christi*,
    749 F. Supp. 2d 521 (S.D. Tex. 2010) ...............................................................26

*Manning v. Chevron Chem. Co., LLC*,
    332 F.3d 874 (5th Cir. 2003) ...............................................................................14

*McCoy v. Shreveport*,
    492 F.3d 551 (5th Cir. 2007) ...............................................................................28

*McFall v. Gonzales*,
    143 Fed. Appx. 604 (5th Cir. 2005) ....................................................................20

*Medina v. Ramsey Steel Co, Inc.*,
    238 F.3d 674 (5th Cir. 2001) ...............................................................................15

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) .........................................................................25, 26, 27

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,
    245 F.3d 507 (5th Cir. 2001) ...............................................................................19

*Outley v. Luke & Assocs., Inc.*,
    840 F.3d 212 (5th Cir. 2016) ...............................................................................15

## TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Price v. Fed. Exp. Corp.*,
  283 F.3d 715 (5th Cir. 2002) ................................................................22

*Ray v. Tandem Computers, Inc.*,
  63 F.3d 429 (5th Cir. 1995) .................................................................23

*See Kriegel v. Home Ins. Co.*,
  739 F. Supp. 1538, 1540 (N.D. Ga. 1990) ...........................................19

*Shepherd v. Comptroller of Pub. Accounts*,
  168 F.3d 871 (5th Cir. 1999) ...............................................................28

*Thompson v. City of Waco, Tex.*,
  764 F.3d 500 (5th Cir. 2014) ...............................................................19

*Tiemeyer v. Quality Publ'g., Inc.*,
  144 F. Supp. 2d 727 (S.D. Tex. 2001) ..................................................17

*Wywill v. United Cos. Life Ins.*,
  212 F.3d 296 (5th Cir. 2000) ...............................................................21

**Statutes**

28 U.S.C. § 1658(a) ....................................................................................18

42 U.S.C. §1981 ...................................................................................*passim*

Title VII of the Civil Rights Act of 1964 .........................................*passim*

Civil Rights Act of 1991 ...........................................................................18

Chapter 21 of the Texas Labor Code ..................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .............................................................................14

Fed. R. Civ. P. 56 ................................................................................1, 12

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Nationwide Insurance Company ("Nationwide") files this Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure, seeking complete summary judgment on all of Plaintiff's claims.

### I.    NATURE AND STAGE OF THE PROCEEDING

This is an employment discrimination case in which the plaintiff, Roy Lee Weeks, alleges that his former employer, Nationwide, discriminated against him because of his age and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), Chapter 21 of the Texas Labor Code ("Chapter 21"), and the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981") (race only). Dkt. No. 20. Discovery closed on December 15, 2022. *See* Dkt. No. 37. Docket call is scheduled for June/July 2023. *See* Dkt. No. 35. Nationwide now moves for complete summary judgment.

### II.    ISSUES TO BE RULED UPON BY THE COURT

1. Is Nationwide entitled to summary judgment on all or part of Weeks's Title VII and Chapter 21 claims because he failed to exhaust his administrative remedies?

2. Is Nationwide entitled to summary judgment on Week's failure to promote claim under Title VII, Chapter 21, and Section 1981 when there is no evidence that Weeks was not selected for a lateral role due to his age or race?

3. Is Nationwide entitled to summary judgment on Weeks's Section 1981 discriminatory "forced-transfer" and demotion claims when there is no evidence to show that Nationwide unlawfully discriminated against Weeks and, in any event, the claims are time-barred?

4. Is Nationwide entitled to summary judgment on Weeks's hostile work environment claim?

1

5. Is Nationwide entitled to summary judgment on Weeks's constructive discharge claim?

## III.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

Nationwide employed Weeks in various capacities for approximately 25 years before he retired on September 24, 2021. Despite a long career at Nationwide with ample opportunity to succeed, Weeks now claims he was harassed and discriminated against based on his race and age.

On April 12, 2021, Weeks filed his Original Charge with the Equal Employment Opportunity Commission ("EEOC"), complaining of a performance evaluation he received the month prior. On May 26, 2021, Weeks filed his Amended Charge claiming, for the first time, new age and race related issues that occurred between 2010 and November 24, 2020. Because Weeks's Amended Charge does not relate back to his original charge, he failed to exhaust his administrative remedies, and therefore, this Court lacks jurisdiction over his Title VII and Chapter 21 claims.[1]

Weeks's failure-to-promote claim is not viable because there was no adverse employment action that took place when Weeks was not selected for a lateral position within Nationwide. Nevertheless, Weeks cannot demonstrate that his race or age motivated Nationwide's decision when it selected another, more experienced

---

[1] The only timely, though still not viable, claim that survives is Weeks's failure-to-promote based on race and age discrimination under Title VII, Chapter 21, and Section 1981.

candidate for the position. Accordingly, Nationwide is also entitled to summary judgment on his failure-to-promote claim.

Weeks cannot succeed on his other race discrimination claims because there is no evidence that he was subjected to a "demotion," "forced transfer," hostile work environment, or "constructive discharge" due to his race. Although Weeks contends that Nationwide "replaced" his assignment and gave his "high-performing" stores to a "White manager," and that he was given "negative performance reviews that could not be substantiated," Weeks offers no credible evidence to support these allegations. Nationwide can demonstrate legitimate, nondiscriminatory reasons for its decisions—including two reductions-in-force ("RIF") and company-wide restructures—and Weeks cannot show that Nationwide's justifications for its actions was a mere pretext for discrimination. Because Weeks cannot articulate a cognizable race discrimination claim under Section 1981, this claim must be dismissed.

Finally, Weeks's hostile work environment claim fails because of timeliness and exhaustion issues, and also on the merits. Weeks complains of three discrete incidents over the course of eighteen years in which he claims he was given two negative performance evaluations and was "berated" by his manager. These incidents are not sufficiently severe or pervasive to satisfy the high standard of a hostile work environment claim as a matter of law. Weeks's constructive discharge claim fails for similar reasons, and Nationwide is entitled to summary judgment as a matter of law.

## IV.    STATEMENT OF FACTS

Weeks worked at Nationwide for over two decades. Ex. A at 48:17-20 During his career, Weeks was promoted multiple times and received merit-based pay increases. Ex. A at 49:6-17, 55:17-19, 61:7-16; Ex. A-3; Ex. F at ¶ 3. Weeks primarily spent his career in the auto claims division,[2] servicing Nationwide's insureds and the shops that repaired the insureds' vehicles. Ex. A at 60:13-20. Throughout his employment, Weeks witnessed at least two RIFs followed by organization-wide restructures—one in 2017/2018 and then another in 2019. These two restructures and a subsequent application for an internal position in 2020 form the crux of Weeks's claims.

### A.    Overview of Weeks's Employment with Nationwide

Nationwide hired Weeks as an Adjuster in 1990. *See* Ex. A at 48:17-20. Weeks was promoted to various positions throughout his career, and other than one complaint in 2010, which he admits was resolved to his satisfaction, Weeks continued his employment without issue for over thirty years.[3] Weeks eventually became a Technical Manager in the auto appraisal division of the Central Plains Claims Zone. *See id.* at 64:15-65:4; Ex. F at ¶ 4. The auto appraisal division was

---

[2] Over the years, the auto claims division went by various names, including Material Damage or Blue Ribbon, but the primary function of servicing auto remained. *See generally*, Ex. A at 58:1-60:20, 64:2-65:24, 66:16-23, and 69:12-70:1.

[3] In 2008, Weeks was promoted to Field Manager, reporting to Sylvester Mendoza. Ex. A at 61:7-16, 62:2-6. Until then, Weeks did not have any complaints against his managers and thought he was treated fairly. *See generally id.* at 61:2-6. In 2010, Weeks filed an EEOC Charge against Mendoza that he admits was later resolved to his satisfaction. *Id.* at 29:9-10. Nothing about his 2010 EEOC charge forms any basis for the allegations Weeks has brought against Nationwide in the instant suit. *Id.* at 63:6-14.

broken up into various "zones" across different geographical regions. Ex. F at ¶ 4; Ex. B at ¶ 3. Weeks and the other managers managed shops called On-Your-Side ("OYS") shops, which were shops that Nationwide partnered with for its policy holders. Ex. A at 66:16-23;  *see* Ex. D at 113:22-115:10. At the time, Nationwide's shops were divided into "NSO" (National Service Operations) and non-NSO shops. Ex. A at 67:4-14. NSO shops typically had multiple locations across the country and were part of a large organization, whereas, non-NSO shops were regional shops and individually owned body shops and typically referred to shops without a national presence. *Id*. at 67:4-14; Ex. C at 32:1-19. Weeks eventually managed OYS shops concentrated in the Houston area, including both NSO and non-NSO shops. *See* Ex. A at 65:14-21, 67:23-68-5; Ex. J at ¶ 3. Before Nationwide's corporate restructuring in 2017, each geographical zone assigned their managers a mix of NSO and non-NSO shops. Ex B at ¶ 3; Ex. J at ¶ 3.

**B.    Weeks is Assigned a New Associate Director After Nationwide's 2017 Restructure**

In 2017, due to business needs, Nationwide underwent an organization-wide RIF and corporate restructure with the ultimate goal of creating a centralized reporting structure, applying new technology, and creating three streamlined groups within the auto claims department. *See* Ex. D at 42:24-44:5, 107:7-109:20; Ex. A at 70:13-17. After the 2017 RIF, there were approximately 85 managers, including Weeks, remaining in the auto claims department. Ex. D at 41:19-42:16. These 85

managers reported to Associate Directors, who ultimately reported to OYS Director Michael Garris, the new head of the department. *Id.* at 19:15-20:9, 113:14-21, 115:11-14. As part of the 2017 restructure, the 85 managers were then divided into three distinct work groups–virtual, field, and NSO. *Id.* at 20:10-21:15; Ex. E at 16:9-17:1; Ex. C at 34:1-6. While the division of the work group and shops changed, the core job responsibilities, salary and benefits for each position remained the same. Ex. A at 129:13-25; Ex. E at 17:9-24; Ex. B at ¶ 5; Ex. B-1.

During the restructure, Garris worked with each of the managers' prior leaders to collect information regarding each manager's skill set to place them in one of the three groups. *See* Ex. D at 49:21-50:14, 53:11-23, 56:15-57:2.[4] In addition, an assessment was completed on each manager based upon job skills, knowledge base, decision-marking, and innovation, which helped dictate into which work group each manager would be placed. Ex. E at 10:21-11:12. Other factors were also considered as part of the restructuring. For example, for field managers, geography was considered because these managers had to be "on the ground" to have discussions with the shops. Ex. D at 62:11-25. For NSO managers, factors such as geography, platform skills, analytical skills, customer service, technical knowledge, presentation skills, and overall macro skills were considered. *Id.* at 63:1-64:17; Ex

---

[4] The managers' prior performance reviews or prior rankings were not considered as part of this assessment.  Ex. D at 67:20-68:19 and 69:21-24.

E at 18:25-19:23. In addition, employees were given a questionnaire to complete in which they could list their preferences or choices on where they would like to be placed. Ex. E at 14:24-15:12; Ex. E-1; Ex. B at ¶ 4. Garris, the Associate Directors, and the prior leaders considered each employee's choice along with the factors discussed above. Ex. E at 16:9-17:1.[5]

Weeks indicated that his top choice was "On-Your-Side Field." Ex. B at ¶ 4; Ex. E-1. Based on his choice, along with the overall assessment, Weeks was assigned to the OYS field position. Ex. E at 10:21-11:12, 28:1-21; Ex. B at ¶ 4. Weeks was assigned a new manager, Associate Director Kurtis Udelhofen, along with some new OYS field shops. Ex. A at 71:23-72:19; Ex. C at 29:2-13. Because the team had reduced in size, the remaining managers were notified that they would now be responsible for a higher shop count and a higher volume of claims. Ex. C at 33:16-25.

While Udelhofen managed Weeks, he provided Weeks with monthly one-on-one sessions in which they discussed development opportunities, results, and improvement. Ex. C at 25:18-26:17, 49:7-22, 51:18-52:19, 55:1-16, 56:4-21. Udelhofen also conducted ride-alongs, in-person sessions, and shop visits with Weeks to support him. *Id.* 26:1-14. Throughout these sessions, Udelhofen counseled Weeks on ways to improve his performance. *Id.* 27:1-5.

---

[5] Whether a manager handled NSO shops before the 2017 restructure did not impact whether that the manager was assigned NSO shops after the restructure. Ex. E at 17:2-24, 18:5-20.

For almost a year, Weeks did not complain to Udelhofen of his position or the shops assigned to him.[6] *See generally,* Ex. A 73:21-74:21. Following his 2018 year-end review, however, for which he received a "Developing" rating,[7] Weeks complained of unfair treatment to the Office of Associate Relations ("OAR"). *See id.* at 74:15-21, 74:25-75:19, 89:21-92:19, 162:10-18; Ex. C at 24:19-25:10. Weeks primarily complained that he was "berated" by Udelhofen during two Skype meetings in 2018 and that he believed it was because Udelhofen was close to Weeks's prior manager, Mendoza, against whom Weeks had filed an EEOC charge eight years prior. *See* Ex. A at 73:21-74:21, 74:25-75:19, 162:15-18; Ex F at ¶ 5. Weeks claimed that Udelhofen was unfairly holding him accountable for the performance of the shops he had been managing for a year, which resulted in the "Developing" rating on this review. *See* Ex. A at 73:21-74:21. Weeks alleged that following the restructure, Richard Skowronek, a Caucasian manager, received Weeks's "high-perform[ing]" shops and that Weeks received Skowronek's low-performing shops, which impacted his year-end assessment. *See generally,* Ex. A at 77:9-80:1.[8] Weeks also complained about Udelhofen's leadership style. *Id.* at 73:21-74:5.

---

[6] The only person that Weeks allegedly complained about his shop assignments to his previous leader, Brenda Gray. Ex. A at 128:16-129:9. Even then, Weeks did not tell her that he believed that he was assigned his shops due to his race. *Id.*

[7] Weeks's performance review was based in part on Customer Service Index numbers. *Id.* at 89:21-92:19.

[8] As explained *infra*, shops were redistributed to all remaining managers. Weeks and Skowronek did not have a true exchange of shops. Ex. A at 98:11-23.

OAR investigated Weeks's complaints and found no merit to his allegations. *Id.* at 74:25-75:5 and Ex. F at ¶¶ 6-7 . Specifically, OAR found that all the managers under Udelhofen were assigned new shops, not just Weeks. Ex. F at ¶ 7. Weeks could provide no further documentation of his concerns, and OAR advised Weeks they could substantiate none of his allegations. *Id.* Weeks did not pursue his claims any further. *Id.*

**C.    Weeks is Issued a Job Elimination Notice as Nationwide Undergoes a RIF and Reorganization in 2019**

In early 2019, due to declining claim volumes and expense challenges, Nationwide restructured the organization and eliminated over 300 positions within the organization, including Weeks's. Ex. D at 81:3-14; Ex. F at ¶ 8. As part of the RIF, managers completed an assessment for each of their employees for review by OAR. Ex. D at 81:15-82:7; Ex. F at ¶ 8. On or about February 15, 2019, Nationwide notified Weeks and 303 other employees of their job elimination. *See* Ex. A at 77:9-25; Ex. F at ¶ 8. Within Weeks's department, approximately eleven managers, including Weeks, were given 60 days to find another job, or else they would be terminated. *See* Ex. A at 77:9-78:23. The job elimination decisions were based upon the last three years' performance rankings, knowledge, initiative, and decision making skills. Ex. F at ¶ 8. But Weeks did not know the basis for Nationwide's selections and only "assumed" that he was selected for the RIF based only on his most recent performance review. Ex. A at 79:5-9.

Instead of taking the severance, Weeks applied for and accepted the position of Field Claims Specialist II – Property. Ex. A at 80:9-81:23. This resulted in an approximate $17,000 annual pay decrease and new job duties, including delivering outstanding customer service experience to all of Nationwide's customers. *Id.* at 80:9-81:23, 82:23-84:6; Ex. F at ¶ 9; *compare* Ex. A-4 *with* A-5.

For about a year, Weeks had no issues with his managers. Ex. A at 84:11-85:20. Even after that time, the only concern Weeks had was with his Associate Director, Linh Nguyen, whom Weeks thought favored California-based associates more than Weeks, the sole Houston-based associate. *Id.* at 85:21-86:4. Weeks believes this alleged favoritism impacted his year-end evaluation from Nguyen in 2020. *Id.* at 85:23-86:18. Weeks's 2020 evaluation, which was based in part on CSI scores, initially rated him as "Developing." *Id.* 102:21–111:18. After Weeks expressed his dissatisfaction with his evaluation, Nguyen removed some of the negative CSI scores impacting his rating, raising his evaluation to "Meet Expectations." *Id.*; Ex. G at ¶¶ 7-9; Ex. G-3. Despite the score change, Weeks remained dissatisfied and later took short term disability leave, citing his work load and lack of appreciation. *See* Ex. A at 112:3-113:13.

## D.    Weeks Applied For but Did Not Receive a Lateral Position in 2020

On or about November 11, 2020, the Centralized Property–Property Reinspection Team was hiring a Field Claims Spec III, Property Repair Network Reinspector for the

Southeast/South Central market. Ex. I at ¶ 3; *see generally* Ex. H 21:22-24 and 24:20-25:25. Phillip Armstrong, the manager in-charge of hiring, was looking for a candidate who could work jointly with the department's vendor managers and field operations personnel and who had experience writing estimates with software used by the division. Ex. H at 25:10-29:23; Ex. I at ¶ 3; Ex. I-1. Weeks applied for the position. Ex. A at 141:13-142:4. After the job was posted, Armstrong received the names and resumes of candidates shortlisted by Nationwide's talent acquisition team. Ex. I at ¶¶ 3-4. Armstrong interviewed five candidates for the job, including Weeks. *Id.* at ¶¶ 4-5; Ex. H at 96:2-14. However, Armstrong chose another candidate for the position based on that candidate's experience, positive recommendations, and overall attitude. *See generally* Ex. H 32:10-34:23; Ex. I at ¶ 6; Ex. I-2.

## E.    Weeks's Disability Leave and Retirement

After complaining of his 2020 Year-End Review, Weeks abruptly stopped coming to work, and around March 4, 2021, Weeks took a short-term disability leave of absence until September 7, 2021. Ex. A at 181:18-21; Ex G at ¶¶ 10-11. With the intention of retiring from Nationwide, Weeks returned to work at the same position. Ex. A at 120:12-121:10. Weeks ultimately retired from Nationwide on September 24, 2021. Ex G at ¶ 11; Ex. G-4. Even in his email notifying Nationwide of his retirement, Weeks stated only that he was electing to retire due to his recent health issues. Ex. G-4.

Weeks now brings this lawsuit, alleging Nationwide harassed him during his

employment based on his race, and that it discriminated against him due to age and race in the employment decisions discussed above.

## V.    ARGUMENT & AUTHORITIES

### A.    Summary Judgment Standard

To prevail, the movant must demonstrate there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant meets its burden, the non-movant must demonstrate by substantial evidence that there is an "outcome determinative" issue of fact in dispute. *See Hanchey v. Energas Co.*, 925 F.2d 96, 97 (5th Cir. 1990) (citing *Fontenot v. Upjohn* Co., 780 F.2d 1190, 1195-96 (5th Cir. 1986)). Because Weeks bears the burden of proof, he must present sufficient evidence to establish the existence of each essential element of his case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Weeks's burden is not satisfied by unsubstantiated assertions, unsupported speculation, or mere allegations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.    Weeks's Age and Race Discrimination Claims are Barred by the Statute of Limitations under Title VII and Chapter 21

Weeks must satisfy a fundamental prerequisite to proceed with his age and race discrimination claims against Nationwide—he must establish that he timely filed a charge of age and race discrimination with the EEOC within 300 days of learning of the allegedly adverse employment action. *Anderson v. City of Dallas*, 116 F. App'x 19, 27 (5th Cir. 2004) (citing *Washington v. Patlis*, 868 F.2d 172, 175

(5th Cir.1989)). In a similar vein, Chapter 21 claims must be administratively exhausted through the filing of a charge within 180 days of the alleged unlawful employment decision. Tex. Lab. Code §§ 21.201 and 21.202(a); *Hinkely v. Envoy Air, Inc.* 968 F3d 544, 552 (5th Cir. 2020). Because Weeks cannot show he satisfied this requirement regarding certain aspects of his claims, they should be dismissed.

Weeks filed his original charge on April 12, 2021 ("Original Charge"). Dkt. No. 12-1. In his Original Charge, Weeks alleged (1) he received a second "Does Not Meet" evaluation rating on March 3, 2021, (2) a similar prior evaluation rating resulted in his 2019 transfer to a lower paying Claims Specialist position, (3) he was "was under three different managers during the "past performance year," and (4) a white male co-worker "had worse numbers" but received a higher "[M]eets" rating.[9] *See id*. Weeks's Original Charge includes no factual allegations related to age discrimination, his alleged application for a promotion on November 24, 2020, or facts supporting a hostile work environment claim. *Id.* Weeks then filed an amended charge on May 26, 2021 ("Amended Charge"), describing additional alleged events occurring between 2010 and November 24, 2020, when he applied for a "promotion." *See* Dkt. No. 8-2.

That Weeks filed a race discrimination charge on April 12, 2021, and "amended" it on May 26, 2021, does not resuscitate his age and race discrimination

---

[9] Andre Clay, whom Weeks alleges is a comparator, is an African American man. Ex. F at ¶ 9.

claims because amendments that add entirely new and distinct claims do not relate back to the original filing date. *See, e.g., Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247-48 (5th Cir. 1985) (claim of sexual harassment filed as an amendment beyond time period did not relate back to charge of age and sex discrimination); *EEOC v. Mississippi College*, 626 F.2d 477, 483-84 (5th Cir. 1980) (allegations of racial discrimination do not relate to or grow out of allegations of sex discrimination advanced in original charge and therefore do not relate back).[10] Thus, any allegations Weeks makes of hostile work environment before July 30, 2020, or age discrimination before November 27, 2020, are time-barred and may not be considered.[11] And even if these claims do relate back to his original charge, any alleged adverse action before June 16, 2020 are untimely.[12]

## C.   Weeks Cannot Establish his Failure-to-Promote Claim under Section 1981, Title VII, or Chapter 21

Weeks alleges he applied for and did not receive a Field Reinspector position on November 24, 2020, because Nationwide discriminated against him on the basis

---

[10] *See also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 879 (5th Cir. 2003) (holding that since the amended charge raised different theories of recovery, it did not relate back to the original charge).

[11] *See also* the arguments asserted in Nationwide's Motion to Dismiss Plaintiff's Amended Complaint, Dkt. 21, incorporated herein fully by reference.

[12] Accordingly, Weeks's race and age discrimination claims arising from his 2010 "PIP," 2017/2018 alleged "forced transfer," and the 2019 job elimination and rehiring he characterizes as a "demotion," such claims have not been timely administratively exhausted under Chapter 21 of the Texas Labor Code and Title VII and must be dismissed. *See Bowers v. Nicholson,* 271 Fed. Appx. 446, 449 (5th Cir. 2008).

of his race and age when it did not select him for the position. Ex. A at 141:21-143:7.

To establish a *prima facie* case of discrimination on a failure-to-promote claim,

Weeks must show (1) he belonged to a protected class, (2) he applied to and was

qualified for a position for which applicants were being sought, (3) he was rejected,

and (4) another applicant not belonging to the protected class was hired. *Medina v.

Ramsey Steel Co, Inc.*, 238 F.3d 674, 681 (5th Cir. 2001).  To prove discrimination

in other situations, Weeks must demonstrate (1) he is a member of a protected class,

(2) he was qualified for his position, (3) he was subjected to an adverse employment

action, and (4) he was treated less favorably than similarly situated employees

outside of his protected class. *Brandon v. Sage Corp*., 61 F. Supp. 3d 632, 643 (W.D.

Tex. 2014).[13] In either case, if Weeks establishes a *prima facie* case, the burden shifts

to Nationwide to offer a legitimate, non-discriminatory reason for its actions before

the burden shifts back to Weeks to prove that Nationwide's reason was pretext.

*Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016).

### i.    Weeks did not suffer any adverse employment action

Week's claim fails because the position he sought was not a promotion, and

Weeks cannot demonstrate otherwise that he suffered an adverse employment

---

[13] Weeks's race discrimination claim under Section 1981 is analyzed under the same standard as his claim under Title VII.  *Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 650 (5th Cir. 2012); *See also Jones v. Robinson Prop. Group, L.P*., 427 F.3d 987, 991–92 (5th Cir.2005).  The same is true for Weeks's TCHRA claims. *See Hoffman-La Roche v. Zeltwanger*, 144 S.W.3d 438, 445-46. (Tex. 2004).

action. Although Weeks alleges that the Property Reinspector position was a "promotion," the undisputed evidence shows that the position was equivalent to the position he held. Ex. H at 24:16-25-9; Ex. I at ¶ 3; *compare* Ex. I-1 *with* Ex. A-5. The Reinspector position was not a management role, and it paid less than what Weeks was then-earning.[14] Ex. I at ¶ 3. At best, it could be considered an equivalent role, and the denial of a lateral transfer is not an adverse employment action under Title VII as a matter of law. *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (holding that a purely lateral transfer, which did not involve a demotion in form or substance nor a reduction in pay cannot rise to a materially adverse employment action). Weeks cannot characterize this event as the denial of a promotion to survive summary judgment when the facts do not support that assertion. Because the undisputed evidence demonstrates Weeks did not suffer an adverse employment action, his claim fails as a matter of law.

> **ii.    Nationwide had a legitimate, non-discriminatory reason for not selecting Weeks for the position, and there is no evidence this reason was merely a pretext for age or race discrimination**

Even assuming arguendo that Weeks could meet his *prima facie* burden, Nationwide did not select Weeks for the lateral position for a legitimate, non-discriminatory reason—namely, because they had a more qualified individual with

---

[14] In his position as Property Claims Specialist, Weeks was earning $79,050 annually. Ex. F at ¶ 9, n1. The individual hired for the position was offered only $76,653.23 per year. Ex. I at ¶ 6; Ex. I-3.

more experience whom the hiring managers preferred for those reasons. *See* Ex. H at 42:5-13, 65:13-66:8, 68:15-69:21, 91:7-12, 100:2-23, 101:11-103:21. Nationwide's burden at this stage of the analysis is "slight." *Tiemeyer v. Quality Publ'g., Inc*., 144 F. Supp. 2d 727, 734 (S.D. Tex. 2001). Its burden is only "one of production, not persuasion…[and] can involve no credibility assessment." *Crawford v. Formosa Plastics Corp*., 234 F.3d 899, 902 (5th Cir. 2000).

Specifically, Weeks only had about a year in dedicated property inspection, whereas the individual hired for the role had over five years. Ex. H at 39:7-23. Further, the hired individual received positive recommendations from vendors and his manager. *Id*. at 32:10-24:23, 35:13-20. While Weeks assumes that Armstrong contacted Udelhofen, Weeks's manager from two years ago, and that Udelhofen gave Weeks a negative review based on their "strained relationship," he does not even speculate this hypothetical reference was due to his race or age. Ex. A at 150:16-151:25. Nevertheless, Armstrong does not recall receiving any such negative review. Ex. H at 35:13-20, 89:24-90:4. Weeks also "believes" Armstrong received a recommendation from Weeks's prior leader, Joseph Antoine, but there is no evidence of this either. Ex. A at 148:3-8; Ex H at 57:10-12. In any event, Weeks has no evidence that age and/or race were motivating factors in Nationwide's selection process. Ex. A at 103:22-105:3, 114:2-9; Ex. I at ¶ 7. Because Weeks cannot satisfy his burden

to show he would have been selected for this position but for his age and race, Nationwide is entitled to summary judgment as a matter of law.

## D. Weeks Cannot Establish Claims of Discriminatory "Forced Transfer" or Demotion Under Section 1981 as a Matter of Law

To resurrect his time-barred claims, Weeks alleges he was discriminated against based on his race and age in violation of 42 U.S.C. § 1981 when he was intentionally assigned poor performing shops after the 2017/2018 restructure. Ex. A at 79:15-80:1. Weeks also claims that after the 2019 reorganization, he was forced to apply for a position that earned less money. *Id.* at 80:9-23.

Weeks's claims should be dismissed because they are time-barred. Because Section 1981 does not include its own statute of limitations, the Court should reply upon the most analogous state statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004). In Texas, this means a two-year statute of limitations applies to §1981 claims. *Fonteneaux v. Shell Oil Co.*, 289 F. App'x 695, 698–99 (5th Cir. 2008). Because Weeks's claims arose before November 16, 2019 (two-years before Plaintiff's date of filing his Original Petition), they are time-barred.[15]

---

[15] The four-year federal "catch-all" statute of limitations under 28 U.S.C. § 1658(a) applies only "if the plaintiff's claim against the defendant was made possible" by the 1991 amendments. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). A two-year statute of limitations applies to §1981 claims that were actionable prior to the Civil Rights Act of 1991, which amended §1981. *Fonteneaux*, 289 F. App'x at 698–99. In determining which statute of limitations applies, courts look at whether the position on which the claim is based "involved an opportunity to enter into a new contract with the employer," in which case, the pre-1991 two-year statute of limitations applies. *See id.* at 698–99. To determine whether the new position constitutes "an opportunity to enter into a new contract," the Court compares the employee's "current duties, salary, and benefits" with those in the new position. *Id.* at 698–99. Thus, a promotion from a subordinate role to one

### i.   Weeks's "forced transfer" discrimination claim fails

*a. Weeks cannot demonstrate a prima facie case.*

Even if Weeks's claims fell within the limitations period, his "forced transfer" claim fails as a matter of law because Weeks cannot demonstrate he suffered an adverse employment action or that individuals outside his protected class were treated more favorably. As discussed above, to establish a *prima facie* case of race discrimination, Weeks must show he was subject to an adverse employment action and that similarly situated employees outside his protected class were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). Weeks cannot make such a showing.

Fatal to Weeks's "forced transfer" claim is the existence of facts that plausibly demonstrates the decision to reassign Weeks's shops was "an adverse employment action," which the law defines as "an ultimate employment decision," such as "hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014). A lateral transfer, even one that merely "limits an employee's opportunities for promotion," does not qualify as

---

that would "allow an employee to hire and fire subordinates" is considered a "new and distinct" employment relationship actionable under §1981 before 1991 statutory changes and is not subject to the four-year statute of limitations. *Id*. By analogy, at least one court has held a demotion also constitutes a new and distinct relationship. *See Kriegel v. Home Ins. Co.*, 739 F. Supp. 1538, 1540 (N.D. Ga. 1990) (it follows, therefore, that demotion claims remain actionable under Section 1981 before 1991 amendments if the change in position results in "a new and distinct relation between the employee and the employer"). Because Weeks alleges actions relating to new positions with different responsibilities, the two-year statute of limitations applies.

an adverse employment action as a matter of law. *McFall v. Gonzales*, 143 Fed.

Appx. 604, 608 (5th Cir. 2005). For example, a "transfer to a different store with

the same pay and benefits [does] not constitute an adverse employment action even

though [the employee] coincidentally made less in bonuses." *Kirmer v. Goodyear*

*Tire & Rubber Co.*, 538 F. App'x 520, 528 (5th Cir. 2013).

Weeks alleges that the 2017/2018 "forced transfer" resulted in him being

assigned to less favorable field OYS shops, which resulted in lower bonuses and a

negative performance review. Ex. A at 89:21-90:17, 94:22-95:4. But Weeks admits

that the only way his job changed following the restructure was the assignment of

different shops to manage. *Id.* at 72:4-19,129:13-25; *see also*, Ex. E at 17:9-24; Ex

B at ¶ 5; Ex. B-1. Weeks's compensation did not change when his shop assignments

did, nor did any other fundamental aspect of his employment. Ex. A at 129:22-23.

While Weeks claims that the reassignment of shops led to a poor performance review

the following years, whether or not this speculative belief could be substantiated, the

Fifth Circuit has held that performance reviews do not qualify as ultimate

employment actions. *Cardenas-Garcia v. Texas Tech Univ*., 2004 WL 2862319, at

*1 (5th Cir. 2004)[16]; *Douglas v. DynMcDermott Petroleum Operations Co*., 144

F.3d 364, 373 n.11 (5th Cir. 1998). Because Weeks cannot demonstrate that he

---

[16] Unpublished opinion attached as Exhibit K.

suffered an adverse employment action, as a matter of law, his Section 1981 "forced transfer" claim should be dismissed.

Weeks's claim that his forced transfer was discriminatory also fails because there is no evidence that Weeks was treated less favorably than similarly situated employees outside of his protected class. To prevail on such claims, Weeks must show he was treated less favorably than other non-Black employees, under "nearly identical" circumstances. *Wywill v. United Cos. Life Ins*., 212 F.3d 296, 302 (5th Cir. 2000). To be "nearly identical" the employees must have the same supervisors, positions, duties, and be given preferential treatment under nearly identical circumstances. *Chambers v. Joseph T. Ryerson & Son, Inc.*, No. 3:05-cv-1553-D, 2007 U.S. Dist. LEXIS 48338, at **18, 28-32 (N.D. Tex. July 2, 2007) (holding that to be nearly identical, comparator must have same supervisor, same job responsibilities and capabilities, and have engaged in same conduct).[17]

As Weeks acknowledges, <u>all</u> the managers were impacted during the 2017 company-wide restructure. Ex. A at 98:2-8. Further, Weeks admits that his shops were not directly swapped with another employee and that he does not even know what the shop assignments were based on. *Id*. at 95:17-96:7, 98:11-23. Weeks simply believes the selection was based on race, which is insufficient evidence to defeat summary judgment as a matter of law. *Id.* at 96:21-24. Because Weeks cannot point

---

[17] Unpublished opinion attached as Exhibit L.

to any other manager who was objectively given preferential treatment, he cannot show he was treated less favorably than someone outside of his protected class, and his claim fails as a matter of law.

> b. *Weeks cannot prove that Nationwide's assignment of shops was pretext for discrimination*

Even if Weeks could establish a *prima facie* case of discrimination, Nationwide has articulated a legitimate, nondiscriminatory reason for reassigning Weeks's shops—a company-wide restructure based on geographical and economic considerations. Weeks was assigned Field OYS shops based on skills, input from various leaders, geographical considerations, and Weeks's own preference. *See* Ex. D at 62:11-64:17; Ex. E at 14:24-15:12, 16:9-17:24; Ex B at ¶ 4; Ex. E-1. Nationwide is entitled to summary judgment because Weeks cannot show that these stated reasons for the shop reassignments were pretext for race or age discrimination. To make such a showing, Weeks must present evidence that Nationwide's stated reasons for the restructure and Weeks's shop assignments are false or otherwise motivated by Weeks's race and/or age. *See Price v. Fed. Exp. Corp*., 283 F.3d 715, 720 (5th Cir. 2002) (explaining that a Plaintiff "must substantiate her claim of pretext through evidence . . . that discrimination lay at the heart of the employer's decision").

Weeks was one of over 85 managers company-wide who received new shop assignments in 2018. *See generally* Ex. D at 19:15-21:23, 42:24-44:5. Weeks admits he does not know the factors that Nationwide considered in making its decisions and

that "leadership" as a whole decided. Ex. A at 128:9-15. Further, Weeks testified that he does not know who specifically changed his shops to determine whether the decision maker had a discriminatory animus against him. *Id*. at 96:3-7.

Indeed, Weeks has <u>no</u> evidence, other than his own subjective belief, that Nationwide's business reasons for the restructure and subsequent reassignment of shops were pretext for discrimination. Although Weeks speculates that Nationwide discriminated against him based on his age and race, he offers no support for this theory. The Fifth Circuit clarifies that a plaintiff must provide the court with more than his own subjective belief he was discriminated against to survive summary judgment. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995); *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("[A]n employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief."). Because Weeks has no such evidence, this claim fails as a matter of law.

### ii.    Weeks's Discriminatory Demotion Claim Fails.

Even if it was not time-barred, Weeks's "demotion" claim stemming from the 2019 RIF fails because Weeks cannot demonstrate that he was selected for the RIF because of his race. As explained above, and as Weeks acknowledges, the Company's 2019 RIF impacted the material damage department by reducing the number of managers in the department to approximately 50. Ex. A at 130:16-21; Ex. C at 121:17-122:9. Weeks and the other impacted managers were issued a 60-day notice of

elimination. Ex. A at 131:5-132:23; Ex. F at ¶ 8; Ex. A-12. Weeks was given a choice to either take a severance package or to find another job within Nationwide, and Weeks chose the latter. Ex. A at 133:5-134:5; Ex. F at ¶ 9. Accordingly, Weeks applied for and was hired as a Claims Specialist, a non-managerial position. Ex. F at ¶ 9.

Nationwide has articulated a legitimate, nondiscriminatory reason for this change in Weeks's employment—a company-wide RIF based on declining claim volumes and expense challenges, for which Weeks was chosen due to past performance ratings and job skills. Ex. F at ¶ 8; *see* Ex. D at 141:11-145:5. Weeks's claim this action was discriminatory fails because he cannot show that his selection for the RIF was instead pretext for race or age discrimination. Ex. D at 153:1-18. Weeks was one of over 300 employees at Nationwide who received a notice for job elimination. Ex. F at ¶ 8. Weeks admits he does not know why the RIF took place and believes that "leadership" made the decisions. Ex. A at 79:10-12, 130:5-15. Further, Weeks acknowledges that the elimination notices were issued due to performance ratings rather than race. *Id*. at 130:10-15.

While Weeks believes he was selected for the RIF due to his 2018 performance review, which he claims was lower than it should have been due to Udelhofen's discriminatory animus, he provides no credible evidence to support this claim. *See* Ex. A at 137:1-138:15. Instead, Weeks simply surmises that Udelhofen gave him a lower rating because of an EEOC complaint he filed in 2010. *Id*. But when

asked to explain why he believed Udelhofen was biased towards him, all Weeks offers is his own perception of disparate treatment based upon "the camaraderie in team meetings." *Id* at 141:17-22. This type of subjective belief is insufficient evidence of discrimination, as a matter of law. Because Weeks has no credible evidence that his selection for the 2019 RIF—and his corresponding demotion—was motivated by his race, his claim fails as a matter of law.

### iii.    Weeks Cannot Establish a Hostile Work Environment Claim

To support his claim of workplace harassment, Weeks cites to three distinct incidents over his 25-year tenure—his 2010 performance evaluation, an incident in which he claims Udelhofen screamed at him in 2018, and his 2020 performance review. Ex. A at 161:4-163:14; Dkt. No. 20. Even if these incidents were true or unfair in the way Weeks claims, they cannot establish an actionable hostile work environment claim as a matter of law.

To prevail, Weeks must show his workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002); *Flowers v. S. Reg'l Physician Servs. Inc*., 247 F.3d 229, 236 (5th Cir. 2001). The standard to establish workplace harassment in the Fifth Circuit is high. *Gowesky v. Singing River Hosp. Sys*., 321 F.3d 503, 509 (5th Cir. 2003). For harassment to be

sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. *E.E.O.C. v. WC&M Enterprises, Inc., 496* F.3d 393, 399 (5th Cir. 2007). Simple teasing, rude or offensive comments, or isolated incidents will not amount to actionable discrimination. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Hockman v. Westward Commc'ns, L.L.C.,* 407 F.3d 317, 326 (5th Cir. 2004).

To advance a continuous hostile work environment claim based on separate acts that occur before and within the statute of limitations, a plaintiff must allege facts showing the "pre-and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 120. Weeks must demonstrate more than a series of discriminatory acts. *Lee v. City of Corpus Christi*, 749 F. Supp. 2d 521 (S.D. Tex. 2010) (citing *Huckabay v. Moore*, 142 F.3d, 233 239 (5th Cir. 198). Moreover, "[d]iscrete discriminatory acts [i.e., 'termination, failure to promote, denial of transfer, or refusal to hire'] are not actionable if time barred, even when they are related to [other] acts" in a timely filed complaint. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.

First, Weeks's hostile work environment claim has evolved since filing his Amended EEOC Charge, specifically regarding the timeline of alleged events and the nature of the harassing conduct he complains of. To that end, and to the extent Weeks complains of events before November 27, 2020 (300 days before the date of

the Amended EEOC Charge) and November 16, 2017 (four years before the date of Weeks's Original Petition filed in State Court), such claims are untimely under Title VII and Section 1981 and must be dismissed. *See, e.g., id.* at 110-15 and *see Jones v. R.R. Donnelley & Sons Co.* 541 U.S. 369 (2004). Similarly, to the extent Weeks's Complaint and/or deposition testimony include allegations not asserted in his EEOC Charge(s), those allegations are procedurally barred under Title VII. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

Timeliness and failure to exhaust concerns aside, Weeks's allegations regarding a hostile work environment are not actionable as a matter of law because Weeks cannot show that the harassment was sufficiently severe or pervasive such that it affected a term, condition, or privilege of his employment. The standards for establishing a hostile work environment are demanding to ensure that Title VII does not become a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Weeks's allegations, even if true, do not even come close to meeting this demanding standard. To support his claim, Weeks cites to two performance evaluations—10 years apart from one another—and two incidents in 2018 in which he claims his supervisor "berated" him. Ex. A at 161:4-163:14. While Weeks describes the conduct as hostile, he could not recall the language or any specifics about the isolated incident. *Id.* At no point did Weeks describe the incident as

27

physically threatening or humiliating or otherwise provide evidence to suggest it was the "severe" offensive utterance that might support a harassment claim. *Id.* Furthermore, there is no evidence that anything about the manager's conduct unreasonably interfered with Weeks's work performance or undermined his workplace competence. On the contrary, the evidence shows conclusively that Weeks was promoted multiple times during his employment, and that he received numerous raises. Under these circumstances, Weeks's allegations cannot establish a claim for hostile work environment as a matter of law. *See*, *e.g.*, *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (even "boorish" and "offensive" comments are not enough to establish a hostile work environment). Nationwide is therefore entitled to summary judgment on this claim.

### E.    Weeks's Constructive Discharge Claims Fails as a Matter of Law

To survive summary judgment on his constructive discharge claim, Weeks must show that his working conditions were "so intolerable that a reasonable employee in [his] position would feel compelled to resign." *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Indeed, to establish constructive discharge, a plaintiff must establish that his conditions were even more extreme than a hostile work environment. *See, e.g., Jackson v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 54 F. App'x 404 (5th Cir. 2002) ("The Fifth Circuit has set the bar very high for plaintiffs seeking to establish a constructive discharge."); *Kenna v. Potter*, No.

CIV.A. H-05-2069, 2007 WL 1795715, at *3 (S.D. Tex. June 19, 2007) (granting summary judgment on plaintiff's Title VII claims, finding that plaintiff failed to meet the constructive discharge claim that is "even more onerous" than the high standard for establishing a hostile work environment).[18],[19]

Weeks provided no evidence that he was subjected to any conduct that supports a claim for hostile work environment under the law. Weeks does not allege he was subject to harassment designed to force him to resign, nor does he claim he was stripped of responsibilities or compensation to encourage his departure. Weeks admits that no one at Nationwide made any negative comments to him. Ex. A at 161:4-163:14. Even Weeks's alleged "demotion" resulted from a company-wide RIF when he took a lower paying position instead of a severance package. *See generally id.* at 130:5-135:8. Weeks did not consider that his job in the property division resulted in a reduction in job responsibilities. *Id.* at 81:1-12. And Weeks testified that he took a leave of absence, ultimately culminating in his retirement, because his

---

[18] Unpublished opinion attached as Ex. M.

[19] There are six factors to determine whether a reasonable employee would feel compelled to resign, to establish the basis of a constructive discharge claim: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not. *Aryain v. Wal—Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008) (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771-72 (5th Cir. 2001)). To find constructive discharge, there must be "aggravating factors resulting in a greater degree of harassment than is required for a hostile work environment claim." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331-32 (5th Cir. 2004).

job had become stressful due to the long hours he was working. *Id.* at 112:3-113:16.

Thus, Weeks cannot come close to meeting the extremely high burden of showing that his working conditions were so intolerable as to compel an objectively reasonable employee to resign. Because he cannot establish facts to support his claim of constructive discharge, Nationwide is entitled to summary judgment.

## VI.   CONCLUSION

For these reasons, Defendant respectfully requests that the Court grant its Motion for Summary Judgment, that Weeks take nothing, and that Defendant be awarded such other and further relief to which it is justly entitled.

Dated: January 13, 2022                     Respectfully submitted,
*Of Counsel:*                               */s/ Kelley Edwards*_____
Urvashi Morolia                             Kelley Edwards (Attorney in charge)
State Bar No. 24096083                       State Bar No. 24041775
Federal I.D. No. 3436021                     Federal I.D. No. 560755
LITTLER MENDELSON, P.C.                      LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900             1301 McKinney Street, Suite 1900
Houston, TX  77010                           Houston, TX  77010
713.951.9400 (Telephone)                     713.951.9400 (Telephone)
umorolia@littler.com                         kedwards@littler.com
                                            **ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon the Plaintiff on the 13th day of January, 2023, via the Court's electronic filing system.

*/s/ Kelley Edwards*_____
Kelley Edwards